IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37204-9-III consolidated with |
| Respondent, | ) | No. 37637-1-III |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SUSAN ELIZABETH BURNAROOS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — On appeal, Susan Burnaroos seeks vacation, based on *State v. Blake*, of her one conviction for possession of a controlled substance and resentencing based on a lower offender score. She also asks that, during resentencing, the trial court readdress her request for a parenting sentencing alternative, strike the imposition of her community custody supervision fees, and enter a notation that legal financial obligations may not be collected from her Social Security funds. We grant Burnaroos partial relief.

FACTS

This appeal consolidates two Yakima County prosecutions against Susan Burnaroos. The charges in Yakima County Superior Court cause number 17-1-02004-39 stem from drug activity that occurred on October 8, 2017. RP 10. The incidents underlying the charges in Yakima County Superior Court cause number 19-1-00089-39

arise from acts that occurred between December 1, 2018 and January 14, 2019. The 2019 charges stem from a narcotics investigation, in which law enforcement determined that Burnaroos participated in four sales of methamphetamine and heroin. At the time of the 2018-2019 investigation, Burnaroos' 2017 case was pending. Further facts are not relevant to this appeal.

PROCEDURE

On October 13, 2017, in cause number 17-1-02004-39, the State of Washington charged Susan Burnaroos with possession of methamphetamine with intent to deliver and first degree unlawful possession of a firearm. The State twice amended the information and, on August 29, 2019, the State ultimately charged Burnaroos with possession of methamphetamine with intent to deliver, first degree unlawful possession of a firearm, and possession of a stolen motor vehicle.

On January 17, 2019, in cause number 19-1-00089-39, the State of Washington charged Susan Burnaroos with six charges. In an amended information, filed August 29, 2019, the State charged Burnaroos with four counts of delivery of a controlled substance, possession of a controlled substance, and third degree possession of stolen property.

On August 29, 2019, Susan Burnaroos pled guilty to eight total crimes. In cause number 17-1-02004-39, Burnaroos pled guilty to possession of methamphetamine with intent to deliver and unlawful possession of a firearm in the first degree. She also pled guilty to all six of her charges under cause number 19-1-00089-39, four counts of

delivery of a controlled substance, possession of a controlled substance, and third degree possession of stolen property.

At a sentencing hearing, Susan Burnaroos sought a parenting sentencing alternative. The parenting sentencing alternative would permit Burnaroos to avoid prison, serve one year of community custody, and engage in controlled substance treatment. RCW 9.94A.655(4)-(6). The State requested a standard range sentence of 108 months' confinement and a year of community custody.

At the sentencing hearing, the State introduced a Department of Corrections (DOC) risk assessment report. The fifteen-page report mentioned Susan Burnaroos' son. According to the report, Burnaroos' son lived with her. The son possessed special needs and was enrolled in middle school. The son's father visited him on the weekends.

The risk assessment mentioned that Susan Burnaroos registered for drug dependency services twenty-two times between 1995 and 2005. The report further revealed that Burnaroos reported to the DOC evaluator that she used controlled substances at times when her son attended school. She also used drugs, with friends and the son's father, when the son was at home, but occupying another room.

The risk assessment report read:

> Ms. Burnaroos is not actively working on a prevention plan, she is not in any treatment.
> Ms. Burnaroos was notified that drug use, misuse, abuse, possession, associating with drug users, and/or congregating at known drug locations

will not be tolerated is [sic] she's sentenced to FOSA [Family and Offender Sentencing Alternative].

Note—Despite being told this, Ms. Burnaroos was not being forthcoming or fully transparent with DOC. It was after further attempts to get the truth that Ms. Burnaroos admitted to using methamphetamine on 07/20/2019. Furthermore, during a home investigation on 07/25/2019, Ms. Burnaroos had the signs and symptoms of someone who was under the influence of drugs. Symptoms included: twitching, eyes were blood shot, eyes were dilated, rapid eye movement, rapid talking, moving at a fast pace, repeating words, and trying to avoid conversation with DOC. Also, on 07/23/2019 and 07/25/2019, she was not being forthcoming by naming the adult males that were on her property. She claimed to know their names, but would not disclose their names to DOC herself.

Clerk's Papers (# 17-1-2004-39) (CP) at 17. The report continued:

Due to Ms. Burnaroos's admission to using methamphetamine on 07/20/2019; the signs and behaviors that she was continuing to use methamphetamine on 07/25/2019; discharging from mental health programming; not participating in chemical dependency treatment, and no[t] fully cooperating with DOC for the purpose of this investigation, she has the potential to put the community at risk if she continues this pattern of behavior.

CP (# 17-1-2004-39) at 19.

The risk assessment report ended by stating a parenting sentencing alternative was

not appropriate. The author of the report wrote:

Based on the information obtained, DOC does not feel like [Burnaroos] is a suitable candidate for FOSA. Furthermore, a Plea has not been agreed in court and the sentencing range must meet FOSA criteria, "The high end of the defendant's sentence range is more than one year". If a guilty plea is guaranteed and his [sic] sentencing range meets FOSA criteria, then Ms. Burnaroos will be eligible for a FOSA sentence.

Ms. Burnaroos's child could benefit from her being sentenced under FOSA, so long as long [sic] she follows her conditions and

4

> requirements, by entering into mental health services, works on a
> treatment plan, stays clean and sober, puts her child first, has a pro-
> social network, and is cooperative with DOC.

CP (# 17-1-2004-39) at 21 (boldface omitted).

At the sentencing hearing, Susan Burnaroos submitted a report and a letter

summarizing the report from her treatment provider, Comprehensive Healthcare. The

letter read that Burnaroos started treatment on September 16, 2019. The letter added that,

as of October 15, 2019, she was performing well and appears willing and motivated to

follow her treatment recommendations. At the sentencing hearing in November 2019, the

State argued for prison time and against imposition of a parenting sentencing alternative.

The State stated that Susan Burnaroos' offender score was six with the most serious

charge being possession of a controlled substance with intent to deliver. The State, based

on the DOC report, contended that Burnaroos had past opportunities for treatment, but

had not been successful and her drug use posed a danger to her son. The State

highlighted that the 2019 charges occurred when the 2017 case was pending. The State

maintained that a FOSA sentencing alternative would present a danger to the community.

Susan Burnaroos acknowledged her drug problem and apologized to the court and

Yakima County for her drug activity. She asked for the opportunity to change. RP 30.

Burnaroos' attorney asserted that Burnaroos had recently "sobered up." Report of

Proceedings (RP) at 23. He added that he and Burnaroos had improved their

communications. Burnaroos' friend, Brandy, spoke on her behalf and stated that, over

5

the past two months, Burnaroos had changed more than Brandy had ever witnessed

before. She claimed that Burnaroos was attending her treatment program.

The trial court denied Susan Burnaroos' request for a parenting sentencing

alternative and in doing so remarked:

> The legislature—when dealing with the sentencing guidelines saw— that sometimes *in very special cases* that there should be a sentencing alternative *for parents that—are required to be there for their children*. And that mandatory sentencing could have an impact upon innocent victims, being children.
> *Those sentencing guidelines are very strict*. They require certain conduct. And—one of the factors that this court considers is whether or not that—the degree of success for a FOSA sentence. It's not a free pass. But on the other side it's designed to recognize the needs of a child rather than the needs of the defendant.
> . . . .
> Ms.—Burnaroos was—my recollections, originally released from custody. And she ran into problems. She didn't show up for court, we had to issue warrants for her arrest. Those warrant—the warrant was quashed, though we eventually had to set bail on that particular case, because she continued [having] problems abiding by the court's orders. Pretty classic for somebody that's addicted to drugs.
> . . . .
> While she is out on bail on $10,000, and her pretrial (inaudible) is revoked, she picks up new charges. Significant charges. Four incidences where law enforcement was involved in controlled buys. They suspected there were many other controlled buys but she's not charged with those.
> And she was dealing significant amounts.

RP at 31-33 (emphasis added).

When denying the family sentencing alternative, the trial court commented that

Susan Burnaroos started improving only two months earlier. She continued to use drugs

around her son.  The court emphasized the recommendation in the DOC risk assessment

report.  At the end of its ruling, the sentencing court commented:

> Ms. Burnaroos, my—my concern—for your son, for—the community, and your activities in this case, have led me to this decision.  It is not out of any malice or anything.  It's just that my concern is is [sic] that there just is not evidence in this case that a FOSA sentence would be successful.
> *And also in the court's opinion, this is not an unusual case*, especially where we have another parent ready, willing and able to care for the child in this particular circumstance.
> So it's for those reasons that I've imposed those sentences.

RP at 42-43.

The trial court imposed a mid-range sentence of ninety months' total confinement.

Susan Burnaroos stated that she received disability income for mental health issues and

child support payments.  The court imposed only $500 of mandatory fines.  The

boilerplate language on Burnaroos' judgment and sentence form, which set conditions of

community custody, required Burnaroos to pay supervision fees.

## LAW AND ANALYSIS

### Drug Possession Conviction

The Washington State Supreme Court recently declared the felony drug possession

statute, RCW 69.50.4013, unconstitutional because of its strict liability nature.  *State v.*

*Blake*, 197 Wn.2d 170, 193-95, 481 P.3d 521 (2021).  As a result, Susan Burnaroos asks

this court to order the vacation of her one conviction for a controlled substance and

remand for resentencing on the other convictions.  The State concedes this conviction

should be vacated and agrees to resentencing of Burnaroos on all the remaining convictions. We accept the State's concession and remand for resentencing because, with the vacation of the one conviction, Burnaroos' offender score will move lower.

Parenting Sentencing Alternative

Susan Burnaroos contends that the trial court misinterpreted the parenting sentencing alternative statute and, as a result, failed to meaningfully consider her request for a sentencing alternative. She argues that this court should remand for the sentencing court to reconsider her request. The State responds that our remand for resentencing because of the vacation of one conviction renders this assignment of error moot. According to the State, the resentencing court may address the contention on remand. Susan Burnaroos asks this court to still address the merits of her assignment.

A case is not moot if a court is able to provide effective relief. *State v. Turner*, 98 Wn.2d 731, 733, 658 P.2d 658 (1983). Further, if a case presents an issue of continuing and substantial public interest and that issue will likely reoccur, this court may still reach a determination on the merits to provide guidance to lower courts. *State v. Ross*, 152 Wn.2d 220, 228, 95 P.3d 1225 (2004).

Susan Burnaroos worries that, if this court declines to address this assignment of error, the trial court will repeat the assigned error and adhere to its previous ruling. She would need to appeal a second time. We agree to address the assignment of error.

This court reviews a trial court's decision to deny a sentencing alternative for an abuse of discretion. *State v. Mohamed*, 187 Wn. App. 630, 645, 350 P.3d 671 (2015). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds or made for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Former RCW 9.94A.655 (2018), in effect at the time Susan Burnaroos committed the crimes of conviction, read:

> (1) An offender is eligible for the parenting sentencing alternative if:
> (a) The high end of the standard sentence range for the current offense is greater than one year;
> (b) The offender has no prior or current conviction for a felony that is a sex offense or a violent offense;
> (c) The offender has not been found by the United States attorney general to be subject to a deportation detainer or order and does not become subject to a deportation order during the period of the sentence;
> (d) The offender signs any release of information waivers required to allow information regarding current or prior child welfare cases to be shared with the department and the court; and
> (e) The offender has physical custody of his or her minor child or is a legal guardian or custodian with physical custody of a child under the age of eighteen at the time of the current offense.

The statute declares further:

> *If the sentencing court determines that the offender is eligible for a sentencing alternative under this section and that the sentencing alternative is appropriate and should be imposed*, the court shall waive imposition of a sentence within the standard sentence range and impose a sentence consisting of twelve months of community custody. *The court shall consider the offender's criminal history when determining if the alternative is appropriate.*

Former RCW 9.94A.655(4) (2018) (emphasis added). The statute permits the sentencing court to consider a risk assessment report or chemical dependency screening report when making its determination. Former RCW 9.94A.655(2) (2018).

When declining to impose the parenting sentencing alternative, the sentencing court remarked:

> The legislature—when dealing with the sentencing guidelines saw— that sometimes *in very special cases that there should be a sentencing alternative for parents that—are required to be there for their children.* And that mandatory sentencing could have an impact upon innocent victims, being children.
> *Those sentencing guidelines are very strict.* They require certain conduct. And—one of the factors that this court considers is whether or not that—the degree of success for a FOSA sentence.

RP at 31-32 (emphasis added). The court later observed that Susan Burnaroos' son maintained contact with his father. The court commented that no information suggested that the father was an inappropriate custodian for the child. The court deemed the case a typical case where another parent may care for the child.

Susan Burnaroos emphasizes the sentencing court's comment about the case being typical and contends, based on this remark, that the sentencing court misinterpreted the parenting sentencing statute as applying only in unique or special cases, such as the lack of another parent to care for the child. She highlights that the statute's requirements indicate that defendants with "physical custody" of a child "at the time of the current offense" are eligible. Former RCW 9.94A.655(1)(e) (2018). Burnaroos also emphasizes

legislative history and recent changes to RCW 9.94A.655 which support the goal of maintaining family bonds. She underscores that a sentencing court must "give great weight to the minor child's best interest." RCW 9.94A.655(5); LAWS OF 2020, ch. 137, § 2.

Although Susan Burnaroos accurately characterizes some of the sentencing court's comments, she focuses on only a small portion of the sentencing ruling. The sentencing court issued a four page ruling that listed the many factors considered when denying the parenting sentencing alternative. Those factors included Burnaroos' many convictions, multiple convictions for delivery of a controlled substance, and unlawful possession of a firearm. The court emphasized that the court released Burnaroos from custody pending the 2017 charges, but she struggled to comply with the court's orders. Instead, she engaged in further criminal activity. The court reviewed the purpose behind the parenting sentencing alternative and astutely commented:

> If we go back to the concept of a FOSA sentence, the concept is is [sic] to have that parent be available to the child. And in this particular circumstance, Ms. Burnaroos, by her conduct, was exposing this child—to criminal behavior, she was exposing this child to drug addicts, much like herself, that would have a profound impact on the child.

RP at 33.

During sentencing, the trial court noted that, although Susan Burnaroos had progressed beginning two months earlier, her past history, as declared by DOC, showed her to be a poor candidate for a parenting sentencing alternative. The positive changes

11

were only recent and occurred once she faced charges that could put her in prison for thirty years. The sentencing court expressed fear for the consequences of Burnaroos' actions on her son and the example that she provided her son.

In short, the sentencing court particularly considered the interests of the child. The court did not create new requirements under the statute. The court wisely exercised its discretion.

Despite affirming the sentencing court's denial of Susan Burnaroos' request for a parenting sentence alternative, we grant the resentencing court discretion to revisit the request on remand. Changes since the initial sentencing might warrant consideration of the request again.

Supervision Fees

For the same reason that the State argues mootness with Susan Burnaroos' assignment of error to the sentencing court's parenting sentence decision, the State argues Burnaroos' assignment of error to the imposition of supervision fees is moot. For the same reason that we decided to address the parenting alternative sentencing, we address the imposition of the fees.

Susan Burnaroos contends that her two judgment and sentences incorrectly read that she must pay supervision fees while in community custody. Community custody costs are discretionary legal financial obligations. *State v. Lundstrom*, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018). RCW 9.94A.703(2)(d) provides:

12

> [u]nless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the department.

The trial court found Susan Burnaroos indigent. The trial court imposed only the mandatory $500 penalty assessment in both cases. Nevertheless, on Burnaroos' judgment and sentence forms, the trial court indicated that Burnaroos shall "Pay supervision fees as determined by DOC."

The sentencing court's ruling implies that it intended to impose only mandatory legal financial obligations. Because we remand for a new sentencing hearing in both cases, we direct the resentencing court, in the event such was its intention, to strike the supervision fees from the two judgment and sentences.

## Social Security Benefits Notation

For the same reason that the State argues mootness with regard to Susan Burnaroos' assignment of error to the sentencing court's parenting sentence alternative decision, the State argues mootness to Burnaroos' assignment of error to the failure to note, on the judgment and sentences, the receipt of Social Security benefits. For the same reason that we decided to address the parenting sentencing alternative, we address the assignment of error.

Susan Burnaroos contends that she receives Social Security benefits and, on remand, the trial court should place a notation in her sentences indicating that the State may not collect legal financial obligations from funds subject to 42 U.S.C. § 407(a).

Pursuant to 42 U.S.C. § 407(a), Social Security disability benefits may not be used to satisfy legal financial obligations. *State v. Catling*, 193 Wn.2d 252, 264, 438 P.3d 1174 (2019). On remand, the judgment and sentence should indicate that legal financial obligations may not be satisfied from any Social Security funds. *State v. Catling*, 193 Wn.2d at 264.

CONCLUSION

We vacate Susan Burnaroos' one conviction for possession of a controlled substance. We remand for resentencing. During resentencing, the court should strike the imposition of community custody supervision fees, if it so intended, and note on the judgment and sentences that the State may not collect legal financial obligations from money derived from Social Security benefits. During resentencing, the court may reconsider, at its discretion, the denial of the parenting alternative sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____        _____
Siddoway, A.C.J.                         Lawrence-Berrey, J.