# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | ) |
| | ) No. 70548-2-I |
| Respondent, | ) |
| | ) DIVISION ONE |
| v. | ) |
| | ) UNPUBLISHED OPINION |
| J.H., | ) |
| D.O.B.: 12/28/2000, | ) |
| | ) |
| Appellant. | ) FILED: September 8, 2014 |

TRICKEY, J. — A judicial officer preparing for an initial hearing in this juvenile offender case discovered and reviewed the juvenile's at-risk youth (ARY) file.[1] The juvenile argues that the judicial officer was not "expressly authorized by law" to conduct such an inquiry. Because the juvenile has served the term of disposition at the time of this appeal, and because of a recently issued Washington judicial ethics advisory opinion, we conclude that the matter is moot. Accordingly, we dismiss this appeal.

The State charged J.H. as a juvenile offender with one count of assault in the fourth degree, a gross misdemeanor.[2] See RCW 9A.36.041(2). Before holding any hearings in the case, the commissioner presiding over the matter disclosed to the

---

[1] Pursuant to RCW 13.32A.030(2) of the Family Reconciliation Act, ch. 13.32A RCW, an "[a]t-risk youth" is a juvenile
> (a) Who is absent from home for at least seventy-two consecutive hours without consent of his or her parent;
> (b) Who is beyond the control of his or her parent such that the child's behavior endangers the health, safety, or welfare of the child or any other person; or
> (c) Who has a substance abuse problem for which there are no pending criminal charges related to the substance abuse.

[2] Court of Appeals Commissioner's Ruling Granting Discretionary Review filed on September 30, 2013.

parties that he had reviewed a sealed ARY court file involving J.H.[3] Because the record before us on appeal is sparse, we glean additional relevant facts from the following uncontested findings, contained in the commissioner's order:

1. [J.H.]'s case was first set for a capacity hearing[4] on February 21, 2013.
2. Prior to the hearing, Commissioner [] reviewed the Judicial Access Browsing System (JABS) [5] in reference to [J.H.].
3. The Commissioner informed the deputy prosecutor and defense counsel, at an informal scheduling meeting, prior to the February 21, 2013 scheduled capacity hearing, that upon viewing JABS, the Commissioner found a recently filed and active At Risk Youth (ARY) case involving [J.H.]
4. The Commissioner reviewed the entire pending ARY file to determine if any existing orders were in effect that may conflict with any upcoming release conditions.
5. The Commissioner informed both counsel that the information in the ARY file was relevant, interesting, and informative.
6. The Commissioner did not discuss the details of what he reviewed in that setting because of the sealed nature of the ARY file.
7. At the Capacity hearing (wherein capacity was stipulated to by the parties) and arraignment held on March 21, 2013, the Commissioner did not disclose or discuss his review of the ARY file on the record because counsel had already been made aware at the prior scheduling meeting.
8. Neither party has sought or gained access to the ARY file through this

---

[3] Clerk's Papers (CP) at 3. The "'[o]fficial juvenile court file' means the legal file of the juvenile court containing the petition or information, motions, memorandums, briefs, findings of the court, and court orders." RCW 13.50.010(1)(b). Generally, unlike a juvenile offender court file, an ARY court file is "confidential" and not open to the public. Compare RCW 13.50.050(2) ("The official juvenile court file of any alleged or proven juvenile offender shall be open to public inspection, unless sealed pursuant to subsection (12) of this act."), with RCW 13.50.100(2) ("Records covered by this section shall be confidential and shall be released only pursuant to this section and RCW 13.50.010.").

[4] RCW 9A.040.050 establishes a statutory presumption that children between the ages of 8 and 12 are incapable of committing a crime. State v. Ramer, 151 Wn.2d 106, 114, 86 P.3d 132 (2004). To overcome this presumption, the State must show that the child had sufficient capacity to understand the act and to know that it was wrong. RCW 9A.04.050; State v. J.P.S., 135 Wn.2d 34, 38, 954 P.2d 894 (1998).

[5] JABS actually stands for "Judicial Access Browser System." Washington Judicial Ethics Advisory Opinion 13-07, 2013 WL 5780438 (2013). "JABS uses a Web browser to display case history information on certain kinds of cases filed in superior, district, and municipal courts in this state." 2013 WL 5780438. These cases include "superior court domestic, parentage, or dependency cases involving children or domestic violence." 2013 WL 5780438. JABS case history information does not include the court files themselves.

Commissioner.[6]

The commissioner entered the following challenged conclusions of law:

1. Ethics advisory opinion 04-07, which refers to Judicial Information Systems (JIS) is also referring to Judicial Access Browsing System (JABS).
2. Because Ethics Advisory Opinion 04-07 is also referring to JABS (see conclusion #1), Ethics Advisory Opinion 04-07 controls in this case.
3. Informing both parties of the Commissioner's review of the ARY file prior to the capacity hearing, directives of Ethics Advisory Opinion 04-07 were followed.
4. There is no basis to recuse.[7]

J.H. filed a motion to revise the commissioner's decision.[8] A superior court judge denied J.H.'s motion.[9]

J.H. subsequently pleaded guilty to one count of disorderly conduct, a misdemeanor.[10] See RCW 9A.84.030(2).

J.H. appeals the superior court's denial of his motion to revise the commissioner's denial to recuse himself. Notably, he does not seek review of the order of disposition. He contends that the commissioner's sua sponte investigation and review of his ARY file violated the Washington State Code of Judicial Conduct's (CJC) proscriptions on ex parte communications—namely, CJC Canon 2.9(C).[11] As a result of the commissioner's ex parte investigation, J.H. argues, the commissioner was required to recuse himself under due process, the appearance of fairness doctrine, and CJC

---

[6] CP at 11-12.

[7] CP at 12.

[8] CP at 8.

[9] CP at 28.

[10] Resp't.'s Response to Motion for Discretionary Review, App. A, Statement on Plea of Guilty, entered August 9, 2013.

[11] CJC Canon 2.9 governs ex parte communications on behalf of a judicial officer. Pursuant to CJC 2.9(C), "A judge shall not investigate facts in a matter pending or impending before that judge, and shall consider only the evidence presented and any facts that may properly be judicially noticed, unless expressly authorized by law."

Canon 2.11(A).[12] The State contends, in response, that the commissioner's conduct fell within the exception provided in CJC 2.9(C) because RCW 13.34.040(2) and .050(6) expressly authorized the commissioner to engage in ex parte investigations for purposes of setting J.H.'s conditions of release.

On appeal, J.H. asks this court to remand the cause to another judicial officer. But this relief would be ineffective. After denying the recusal motion, the superior court imposed a disposition of six months of community supervision, beginning in August 2013, and 20 hours of community restitution work.[13] J.H. has served this disposition. As a result, this case is technically moot. See Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984) ("A case is moot if a court can no longer provide effective relief.").

We may nevertheless review a moot case if it presents an issue of continuing and substantial public interest. In re Marriage of Horner, 151 Wn.2d 884, 891, 93 P.3d 124 (2004) (citing Westerman v. Cary, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994)). We consider the following factors when determining whether a case raises an issue of continuing and substantial public interest: (1) "the public or private nature of the question presented," (2) "the desirability of an authoritative determination for the future guidance of public officers," and (3) "the likelihood of future recurrence of the question." In re Mines, 146 Wn.2d 279, 285, 45 P.3d 535 (2002) (internal quotation marks omitted) (quoting Sorenson v. City of Bellingham, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). The actual application of these criteria is necessary to ensure that an actual benefit to

---

[12] CJC Canon 2.11(A) mandates that a judicial officer "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned."
[13] Resp't's Response to Motion for Discretionary Review, App. B, Order on Adjudication and Disposition, entered August 9, 2013.

the public interest in reviewing a moot case outweighs the harm from an essentially advisory opinion. Hart v. Dep't of Social & Health Servs., 111 Wn.2d 445, 450, 759 P.2d 1206 (1988). But "the public interest exception has not been used in statutory or regulatory cases that are limited on their facts." Hart, 111 Wn.2d at 449.

The public interest exception is not applicable here. In Washington Judicial Ethics Advisory Opinion 13-07, issued while this appeal was pending, the Washington Ethics Advisory Committee addressed the same question that J.H. raises in this appeal: "whether a review by a judicial officer of a record that is sealed and generally unavailable to the public constitutes an ex parte communication, which is prohibited by CJC 2.9(C)." 2013 WL 57804383. The committee concluded that "a judicial officer in a juvenile matter may not *sua sponte* review public and / or sealed records maintained in JABS unless such review is authorized by law, i.e., by statute, court rule, or case law." 2013 WL 57804383. The opinion points to RCW 26.09.182 as an example of express legal authorization that constitutes an exception under CJC Canon 2.9(C). 2013 WL 57804383. In light of this recent judicial ethics advisory opinion, we conclude that there is little likelihood of future recurrence of the issue.

We dismiss this case as moot.

Trickey, J.

WE CONCUR: