IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| PELLCO CONSTRUCTION, INC., a Washington corporation, | ) ) ) | No. 81642-0-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) ) | UNPUBLISHED OPINION |
| CORNERSTONE GENERAL CONTRACTORS, INC., a Washington corporation, NORTHSHORE SCHOOL DISTRICT NO. 417, a Washington school district municipal corporation, | ) ) ) ) ) ) | |
| Respondent. | ) ) | |

HAZELRIGG, J. — PELLCO Construction, Inc. appeals from a denial of its motion for a preliminary injunction. PELLCO concedes that its appeal is moot, as a disappointed bidder's only remedy at law is to seek injunctive relief before a contract is executed. Because PELLCO has not demonstrated a substantial and continuing public interest justifying review, despite mootness, we dismiss the appeal.

FACTS

This dispute arises out of public bidding for Northshore School District's Inglemoor High School Concert Hall & Music Building project. Cornerstone General Contractors, Inc. (Cornerstone) serves as the general

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

contractor/construction manager (GC/CM) for the project. Prior to bidding, PELLCO reached out to the school district several times to express concerns with the fairness and effectiveness of the bid package structure. The school district considered PELLCO's feedback, issued responsive addenda, and slightly altered the bid packages, to address PELLCO's concerns. Most significantly, Cornerstone and Northshore School District split the structures bid package into two discrete packages: one for concrete, one for steel. Interested parties could submit bids for one package or "combination" bids for both packages.

PELLCO Construction, Inc. (PELLCO) bid on the concrete package and submitted the lowest responsive, responsible bid for the package. However, Cornerstone's combination bid was lower than the sum of PELLCO's concrete bid and the lowest separate bid for the steel package. PELLCO timely protested Cornerstone's bid, alleging that RCW 39.10.390 prohibits GC/CMs from bidding on subcontractor work unless the GC/CM performs the work with its own labor (as opposed to subcontracting the work). PELLCO filed a motion for preliminary injunction to enjoin Cornerstone from executing the contract. After oral argument, the King County Superior Court denied PELLCO's motion. PELLCO now appeals.

ANALYSIS

PELLCO's challenge presents a question of statutory interpretation as it argues that the plain meaning of RCW 39.10.390 precludes GC/CMs from bidding on subcontract work if the GC/CM subcontracts that work (as opposed to performing it with its own labor, equipment, and expertise). As such, PELLCO alleges that Cornerstone was legally precluded from bidding on both the concrete

and steel packages because it does not perform steel fabrication or erection work through its own forces and instead sub-contracts its steel work. Northshore School District and Cornerstone argue that the plain meaning of RCW 39.10.390 only requires that the GC/CM perform the subcontract work it bids on by taking contractual responsibility for the work, either by performing with its own forces or by further subcontracting the work.

We must first determine whether we will consider the merits of PELLCO's claim at all. PELLCO concedes that, as a disappointed bidder, it has lost standing to seek a legal remedy. Cornerstone has already executed the structures subcontract, and the project will be complete in December 2021. Cornerstone and Northshore School District ask us to dismiss PELLCO's petition as moot, while PELLCO asks us to grant discretionary review under the public interest exception.

I.    Mootness

A disappointed bidder in a public contract dispute has limited remedies available—they may sue to enjoin the contract before it is executed. Dick Enters., Inc. v. Metro. King County, 83 Wn. App. 566, 569, 922 P.2d 184 (1996). Contract formation serves as a "bright-line cutoff" for bidder standing. Id. at 571. PELLCO concedes that its appeal is moot, as the disputed contract has been executed and work is scheduled to be completed by December 2021. However, PELLCO asks this court to grant discretionary review in the public interest.

As a general rule, this court declines to review cases "where only moot questions" remain to avoid giving advisory opinions. Sorenson v. City of Bellingham, 80 Wn.2d 547, 558, 496 P.2d 512 (1972); Nat'l Elec. Contractors

Ass'n v. Seattle Sch. Dist. No. 1, 66 Wn.2d 14, 17–18, 400 P.2d 778 (1965). There is "[a] recognized exception to this general rule," and this court will grant review of an otherwise moot case if it involves "'matters of continuing and substantial public interest.'" Hart v. Dep't of Soc. and Health Servs., 111 Wn.2d 445, 447, 759 P.2d 1206 (1988) (quoting Sorenson, 80 Wn.2d at 558). This is an exception to the general rule, and we will only "deliver advisory opinions" on "'rare occasions where the interest of the public in the resolution of an issue is overwhelming.'" To-Ro Trade Shows v. Collins, 144 Wn.2d 403, 416, 27 P.3d 1149, 1155 (2001) (emphasis added) (quoting In re Disciplinary Proceeding Against Deming, 108 Wn.2d 82, 122–23, 736 P.2d 639, 744 P.2d 340 (1987) (Utter, J., concurring)).

In determining whether there is sufficient public interest to justify issuing an advisory opinion, courts consider several criteria: 1) the public or private nature of the question presented; 2) desirability of an authoritative determination for the future guidance of public officers; 3) likelihood of future recurrence; 4) the level of genuine adverseness and quality of advocacy; 5) the likelihood the issue will escape review due to short-lived facts. Sorenson, 80 Wn.2d at 558; Westerman v. Cary, 125 Wn.2d 277, 286–87, 892 P.2d 1067 (1994).

A.     Public or Private Nature of the Question Presented

First, PELLCO argues that the public has a significant interest in this dispute because millions of taxpayer dollars are spent on public contracting and thus the public has an interest "in ensuring this money is being properly spent." Cornerstone and Northshore School District argue that this is a private dispute between contracting companies, and the dispute is of a private, commercial nature.

- 4 -

PELLCO's suit arises out of its private, commercial interest in being awarded a contract. PELLCO's "disappointed bidder" standing for seeking an injunction comes from being rejected for a paid contract, as opposed to taxpayer standing. However, the statute at the heart of PELLCO's appeal exclusively governs public contracting.[1] Therefore, the question is broadly of a public <u>and</u> private nature.

### B. Future Guidance for Public Owners

Next, PELLCO argues that without an authoritative determination from this court to guide them, public bodies[2] "may continue to fall under the hypnotism" of the statutory scheme. However, as the respondents point out, no public officer is seeking such guidance. Northshore School District, the public official in this case, opposes discretionary review and does not seek guidance, and PELLCO brings forward no evidence of other public owners in need of guidance. PELLCO's assertion that public owners are "hypnotized" by the statutory scheme is insufficient to justify reviewing a moot case, and this factor weighs against invoking the public interest exception.

### C. Likelihood of Recurrence and Evasion of Review

Third, PELLCO argues that due to the nature of bidder standing, the issue before us is capable of repetition yet will evade review. However, respondents

---

[1] RCW 39.10.390

[2] RCW 39.10.210 defines "public body" as "any general or special purpose government in the state of Washington, including but not limited to state agencies, institutions of higher education, counties, cities, towns, ports, school districts, and special purpose districts."

note that an unsuccessful bidder who is denied a preliminary injunction may timely appeal that denial before their claim becomes moot.

While the standing of a disappointed bidder is fleeting, bidders are not without remedy. A disappointed bidder may seek an injunction to enjoin formation of the contract, and if they fail, they may "immediately appeal the trial court's decision." Dick Enters., Inc, 83 Wn. App. at 571. Here, PELLCO expressly requested the trial court delay issuing its order so it could seek emergency relief in this court. The court granted its request, but PELLCO failed to pursue an emergency stay from this Court, instead filing a notice of appeal after the matter became moot. PELLCO's failure to seek relief while its case was justiciable does not mean the issue will evade review in the future.

PELLCO suggests that RCW 39.10.390 may go another 24 years without interpretation if this court declines to review this case. However, as PELLCO concedes, it is also likely that no case before us has sought interpretation of the statute because its words and meaning are plain and consistent with industry standards.

It is worth noting that our Legislature has created the Capital Project Advisory Review Board to advise the legislature on policies related to public works delivery methods like RCW 39.10.390. Its membership includes many stakeholders in public contracting, including PELLCO's president. PELLCO, and other stakeholders impacted by the GC/CM delivery method, have a clear avenue to pursue questions about RCW 39.10.390 through their advisory role. Without a

stronger showing that this issue is likely to recur and evade proper review, these factors also weigh against issuing an advisory opinion.

D.      Level of Genuine Adverseness and Quality of Advocacy

A final factor "may also play a role" in a court's consideration of reviewing an otherwise moot case—"'the level of genuine adverseness and the quality of advocacy of the issues.'" Westerman, 125 Wn.2d  286 (quoting Hart, 111 Wn.2d at 448).  The respondents allege that PELLCO's performance in this appeal raises questions about the quality of advocacy.  However, Westerman is clear that this final factor "serves to limit review to cases in which a hearing on the merits has occurred."  Id. (citing Orwick v. Seattle, 103 Wn.2d 249, 253-54, 692 P.2d 793 (1984)).  As such a hearing has occurred here, this factor weighs in favor of the public interest exception.

Taking all the factors together, PELLCO has failed to demonstrate a "continuing and substantial public interest" to justify taking a concededly moot case.  Sorenson, 80 Wn.2d at 558.  Consistent with our general rule for non-justiciable cases, we decline to reach the merits and dismiss the case.

II.     Attorney Fees

Cornerstone requests attorney fees on appeal, alleging that it is entitled because PELLCO's appeal was frivolous.  Reasonable attorney fees are recoverable on appeal pursuant to RAP 18.1 if allowed by statute, rule, or contract.  In re Guardianship of Wells, 150 Wn. App. 491, 503, 208 P.3d 1126 (2009).  A party may recover attorney fees pursuant to RAP 18.9 if the petitioner files a

frivolous appeal.  "An appeal or motion is frivolous if there are 'no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility' of success."  In re Recall Charges Against Feetham, 149 Wn.2d 860, 872, 72 P.3d 741 (2003) (internal citation omitted) (quoting Millers Cas. Ins. v. Briggs, 100 Wn.2d 9, 15, 665 P.2d 887 (1983)).  While we dismiss PELLCO's claim as moot, its appeal was not frivolous.  We decline to award attorney fees on appeal.

Dismissed.

WE CONCUR:

_____

Andrus, A.C.J.

_____